IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tyrone D. Johnson,                               Case No. 3:05-CV-07490

         Plaintiff,

     v.                                                    ORDER

General Motors Corp.

         Defendant.

This is a case about alleged retaliation and racial discrimination in the workplace. Plaintiff Tyrone D. Johnson works at General Motors Corp. [GM]'s Powertrain facility in Lima, Ohio. He alleges racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and O.R.C. § 4112, retaliation in violation of Title VII and Ohio common law, and wrongful discharge, in violation of Title VII and Ohio common law, in response to both his termination in 2000 and disciplinary action after he was reinstated. [Doc. 1]. Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367.

Pending is GM's motion for summary judgment as to all of Johnson's claims. [Doc. 22]. For the reasons that follow, the motion will be granted.

## Background

Tyrone D. Johnson began working for GM in 1995. He soon joined the UAW which has a

1

collective bargaining agreement [Agreement] with GM. The Agreement governs the employment terms of all UAW members.

In 2000, Johnson, who had a history of disciplinary problems, punched a co-worker during an altercation. GM investigated the incident and witnesses confirmed Johnson's actions. After its investigation, GM terminated Johnson.

Johnson filed a grievance with the union and complaints with the Equal Employment Opportunity Commission [EEOC] and the Ohio Civil Rights Commission [OCRC]. The EEOC gave Johnson a Right to Sue Notice on October 3, 2001. On January 8, 2002, Johnson filed a lawsuit alleging race discrimination, retaliation, wrongful discharge, and hostile work environment. I dismissed the suit on September 3, 2002, for want of prosecution. GM reinstated Johnson and he returned to work on April 4, 2004.

On June 17, 2005, Johnson filed a second charge of discrimination with the EEOC and the OCRC alleging that GM discriminated against him because of his race. His charge listed three specific incidents from December 14, 2004, to May 18, 2005, but made no mention of retaliation.

The first incident involved GM's suspension of Johnson for hitting a coworker with a crane. He did not allege that race, discrimination, or harassment played any role in GM's decision to suspend him. The second incident involved a coworker alleging that Johnson hit her with a tool. The third incident involved GM's suspension of Johnson for putting a hammer in another employee's face. EEOC granted Johnson a Right to Sue Notice on September 30, 2005.

Johnson subsequently filed the present suit, alleging that his termination in 2000 and subsequent disciplines violated federal and state prohibitions on racial discrimination, illegal retaliation, and wrongful discharge. He seeks compensatory and punitive damages and attorneys'

fees.

## Summary Judgment Standard

Summary judgment may be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a dispute of material fact to be genuine, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The defendant, as the movant for summary judgment, must show the absence of a genuine issue of material fact as to at least one essential element of plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering defendant's motion for summary judgment, I must accept plaintiff's evidence as true and draw all reasonable inferences in his favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Defendant is also entitled to summary judgment if plaintiff fails to make a "showing sufficient to establish the existence of an element essential to that party's case" for which he bears the burden of proof. *Celotex, supra*, 477 U.S. at 322-23.

## Discussion

Claims arising out of GM's termination of Johnson in 2000 are barred from consideration on the basis of *res judicata*. Likewise, Johnson fails to show that GM's 2005 discipline constituted a prima facie case of racial discrimination or illegal retaliation.

### 1. Claims as to Johnson's 2000 Termination

Johnson's claims arising out of his 2000 termination are barred by *res judicata* under both Ohio and federal law because I dismissed his suit on September 3, 2002, for want of prosecution.

Plaintiff did not contest the dismissal. *Johnson v. General Motors Corp.*, No. 02-7015 (N.D. Ohio filed Sept. 3, 2003).

Dismissal for failure to prosecute "operates as an adjudication [on] the merits unless the court, in its order for dismissal, otherwise specifies." Ohio Civ. R. 41(B)(3); *see Pelunis v. G.M. & M.*, 8 Ohio App. 3d 194, 195 (1982). In dismissing Johnson's earlier lawsuit, I did not indicate in its entry that the dismissal was without prejudice. Because dismissal for lack of prosecution under Ohio Civ. R. 41(B) and Fed. R. Civ. P. 41(b) is with prejudice unless otherwise indicated, dismissal of Johnson's lawsuit from 2002 operates as an adjudication on the merits and *res judicata* bars re-litigation.

Regardless, if res judicata did not bar Johnson's claims arising out of GM's alleged conduct in 2000, his claims would fail for a variety of other reasons discussed below.

### A. Discrimination

Johnson's claims against GM arising from his 2000 termination are barred as a result of his failure timely to exhaust available administrative remedies. The analysis is identical for disparate treatment on the basis of race under Title VII and O.R.C. § 4112. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 n.2 (6th Cir. 2000).

Before filing Title VII claims in federal court, a plaintiff must file a timely charge of discrimination with the EEOC. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999). In deferral states such as Ohio, § 2000e-5(e)(1) requires plaintiff to file a complaint with the EEOC within 300 days of the allegedly unlawful employment practice. *Amtrak v. Morgan*, 536 U.S. 101, 109-10 (2002); *see also, Alexander, supra*, 177 F.3d at 407 ("[I]f the alleged unlawful practice occurs in a 'deferral state,' in this case Ohio, which has enacted its own

4

laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act."). The 300-day limitation period begins to run "[o]nce the employee is aware or reasonably should be aware" of the allegedly unlawful employment decision, "not when the plaintiff learns that the employment decision may have been discriminatorily motivated." *Amini v. Oberlin College*, 259 F.3d 493, 498-99 (6th Cir. 2001).

GM discharged Johnson on or about June 1, 2000, but he did not file the present suit until June 17, 2005, more than five years later. Therefore, Johnson's claims related to his discharge in 2000 and any alleged discriminatory acts prior to August 16, 2004 are time-barred and subject to dismissal.

### B. Retaliation

Because Title VII case law is generally applicable to retaliation cases under Ohio common law, *Hampel v. Food Ingredients Specialties*, 89 Ohio St. 3d 169, 175 (2000), I will deal with Johnson's federal and state retaliation claims jointly. The Sixth Circuit has held that failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII action. *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991) (dismissing the plaintiff's Title VII claims because he failed to timely exhaust administrative remedies). If an administrative complaint has been timely filed, the subsequent claim must be "limited to the scope of the [administrative] investigation reasonably expected to grow out of the [administrative] charge." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991) (internal citations omitted).

An administrative investigation into GM's alleged retaliatory conduct could not reasonably be expected to grow out of the EEOC charge. Johnson only alleged in his EEOC complaint that GM discriminated against him. He did not provide any evidence of retaliation, and the EEOC did not

5

investigate any allegations of retaliation. Accordingly, I cannot consider Johnson's federal and state claims for illegal retaliation.

### C. Wrongful Discharge

Ohio follows the employment at-will doctrine that allows either the employer or the employee to terminate the employment relationship at any time and for any reason. *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 103 (1985). The Supreme Court of Ohio created an exception[1] to the employment at-will doctrine by establishing a *Greeley* cause of action for wrongful discharge in violation of public policy "where an employer has discharged his employee in contravention of a sufficiently clear public policy."[2] *Painter v. Graley*, 70 Ohio St. 3d 377, 384 (1994).

To file a *Greeley* cause of action, "the employee must have been an employee at will."

---

[1] The Supreme Court of Ohio created this exception in *Greeley v. Miami Valley Maint. Contrs., Inc.*, 49 Ohio St. 3d 228, 234 (1990) ("[T]he right of employers to terminate employment at will for "any cause" no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy."). While the exception for discharge in violation of a statute has remained steadfast, Ohio courts have differed as to whether a tort action existed for discharge in violation of public policy though not a statutory violation. *Painter v. Graley*, 70 Ohio St. 3d 377, 383 (1994). The Supreme Court of Ohio in *Tulloh v. Goodyear Atomic Corp.*, 62 Ohio St.3d 541, 546 (1992), overruled *Greeley* in part and expressly excluded claims for wrongful discharge absent violation of a statute. *Painter*, *supra,* 70 Ohio St. 3d at 383-384, reinstated such claims.

[2] According to the Supreme Court of Ohio in *Painter*, *supra,* 70 Ohio St. 3d at 383-384 (internal citations omitted):

> "Clear public policy" sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments . . . Today we reaffirm *Greeley* and hold that an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a "sufficiently clear public policy." The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law.

*Haynes v. Zoological Soc'y of Cincinnati*, 73 Ohio St. 3d 254, 258 (1995). Union members, because the collective bargaining agreement governs the terms of their employment, are not employees at will and may not bring a *Greeley* cause of action for wrongful termination in violation of public policy.[3] *Id.* at 257-258.

Because Johnson was a member of the union and, therefore, subject to the union's collective bargaining agreement, he was not an employee at will and is unable to bring a *Greeley* cause of action. Thus, summary judgment is proper as to plaintiff's wrongful discharge claim on this basis alone.

Additionally, the Sixth Circuit has held that where a "plaintiff has a remedy available to him under Chapter 4112, that plaintiff cannot have the same claim under Ohio common law."[4]

---

[3] I have previously allowed a plaintiff whose employment was governed by a collective bargaining agreement to file a cause of action for wrongful termination in violation of public policy. *See Clement v. Sypris Techs.*, 2006 WL 1174249, *3 (N.D. Ohio). My decision in *Clement* was based on an exception to *Haynes* for terminated employees receiving temporary total disability payments. *See id. (*"[T]he Ohio Supreme Court in *Coolidge* created an exception to the *Haynes* bar in cases involving persons, including union members, receiving temporary total disability worker's compensation payments.") (citing *Urban v. Osborn Mfg., Inc.*, 165 Ohio App. 3d 673, 677 (2006)). Johnson does not qualify for this exception because he was not receiving temporary total disability payments when he was terminated.

[4] In *Painter*, *supra,* 70 Ohio St. 3d at 384 n.8, the Supreme Court of Ohio identified four elements to use when determining whether a statute adequately provides for and, thus, precludes the common law tort for wrongful discharge:
> 1) That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); 2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); 3) The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); 4) The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Collins v. United States Playing Card Co.*, 466 F. Supp. 2d 954, 977 (S.D. Ohio 2006). Because § 4112 provides wrongfully discharged employees a remedy analogous to that provided by Ohio's common law wrongful discharge cause of action, claims alleging the latter are barred. *Id.* ("The Court agrees with other courts in this Circuit that the broad scope of remedies available under Ohio Revised Code Chapter 4112 is sufficient to vindicate Ohio's public policy against age discrimination and thus forecloses a separate cause of action for violation of public policy.").

## 2. Claims Arising Out of General Motors' Post-2000 Conduct

### A. Discrimination

Johnson's claims relating to his more recent disciplining also fail. The analysis is identical for disparate treatment on the basis of race under Title VII and § 4112. *Dews*, *supra*, 231 F.3d 1021 n.2. Disparate treatment claims are analyzed under the following framework: 1) Johnson must first establish a *prima facie* case of discrimination; 2) GM must then present evidence of a legitimate, nondiscriminatory reason for its actions; and 3) Johnson must then prove that the reason offered is in fact a pretext for intentional discrimination. *Kent County Sheriff's Asso. v. County of Kent*, 826 F.2d 1485, 1492 (6th Cir. 1987) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)).

A plaintiff establishes a *prima facie* case through evidence showing: "1) membership in the protected class; 2) that she suffered an adverse action; 3) that she was qualified for the position; and 4) that she was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 731 (6th Cir. 2000). A showing that "a comparable non-protected person was treated better" will also satisfy the fourth factor. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.

1992). When the latter approach is used, the plaintiff must present evidence that "at a minimum establishes 1) that he was a member of a protected class and 2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Id.* at 583.

When comparing an employer's treatment of the plaintiff to that of comparable employees who are members of non-protected classes, "the plaintiff must show that the 'comparables' are similarly-situated in all respects." *Id.* To be similarly-situated, the comparable employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*.

Even if I assume that Johnson performed his job satisfactorily, he has still failed to establish a *prima facie* case of racial discrimination. Johnson attempted to show disparate treatment by comparing GM's treatment of him with treatment of others. He did not, however, establish that these other individuals were "similarly-situated." Johnson failed to establish that they reported to his supervisor or that they engaged in similar acts.

That the other participants may have been white, alone does not show that GM discriminated against Johnson when it concluded he was at fault and deserving of discipline. Johnson must show that white employees involved in the same kind of incidents and having a similar disciplinary history to his were not disciplined as severely as he was to make out a prima facie case. Johnson produced no such evidence and, thus, has not made out a *prima facie* case.

Assuming Johnson had shown that he was treated differently, he has not demonstrated that a reasonable jury could find that GM's reasons for firing Johnson were a pretext to conceal racially discriminatory motives. Johnson's violations of workplace rules and threats to other employees

constituted legitimate, non-discriminatory reasons for GM's actions. Johnson presents no evidence that GM's reasons were a pretext for unlawful discrimination. He merely alleges that he was disciplined and that his supervisors and co-workers were united against him because of his race. Such conclusory claims are not sufficient to overcome a motion for summary judgment.

## B. Retaliation

Johnson's final claim for retaliation is dismissed because he has not properly established the elements of a *prima facie* case. Because Title VII case law is also applicable to retaliation cases under Ohio law, *Hampel, supra*, 89 Ohio St. 3d at 175, I will deal with both claims simultaneously. In a retaliation claim, a plaintiff must establish that: 1) plaintiff engaged in protected activity; 2) defendant knew of the plaintiff's protected conduct; 3) defendant thereafter took adverse action against the plaintiff; and 4) adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-387 (6th Cir. 1999); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).

In his complaint, Johnson does not present any evidence that GM took any adverse employment action against him because he engaged in protected activity. Johnson asserts instead that the discipline, itself, constitutes retaliation in violation of both Ohio law and Title VII. Because Johnson has failed to establish the elements of a *prima facie* case of retaliation, GM is entitled to summary judgment.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT defendant's motion for summary judgment shall be, and hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge